UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARCUS M. HENRY,

                Plaintiff,

v.                                                Case No. 25-cv-220-pp

OFFICER J. BAKER, *et al.*,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND ALLOWING PLAINTIFF TO FILE AN AMENDED COMPLAINT**

      Plaintiff Marcus M. Henry, who is incarcerated at Green Bay Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

1

Case 2:25-cv-00220-PP    Filed 08/12/25    Page 1 of 13    Document 14

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On April 9, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $47.85. Dkt. No. 8. The court received that fee on June 30, 2025. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint**

  A. <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

"accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The complaint names as defendants Officer J. Baker, Officer John Doe and Captain Jane Doe. Dkt. No. 1 at 1–2. The plaintiff alleges that early in the morning on March 7, 2022, while he was incarcerated at Brown County Jail, Officers Baker and John Doe came to his cell to give him insulin. Id. at 3. The plaintiff says that he took Glargine insulin, and then Baker gave him a bottle of insulin that had an "N" on it and was "a milky cloudy color." Id. The plaintiff told Barker that this insulin did not resemble the insulin he takes, and Baker

3

"got upset" and told the plaintiff, "That['s] what I have for you here. It's the same thing that you take, so shut up and take it." Id. The plaintiff took the insulin as instructed, and Baker warned him that next time "to just take it or you won't be getting anything." Id.

The plaintiff then reported to court at 7:00 a.m. for a hearing. Id. He says that while he was in a holding cell to wait for the hearing, he passed out and woke up on the floor feeling dizzy. Id. at 3–4. The plaintiff became ill and vomited in the toilet in the cell. Id. at 4. He then attended his court hearing and returned to the jail afterward. Id. The plaintiff alleges that when he returned to his cell, Officer Doe approached him and told him that the plaintiff was "right about that insulin. That was the wrong insulin." Id. The plaintiff told Officer Doe that he became ill before his court hearing and passed out. Id. He asked for a pencil and a grievance form to report what had happened. Id.

The plaintiff then alleges, "The [sic] got [him] a pencil and a grievance form but they also called Greenbay [sic] Prison and said they needed a tra[n]sport back to Portage Prison in Portage Wisconsin." Id. The plaintiff says that within ten minutes of returning to the jail from court, he "was in a van on [his] way back to the prison by Lt. Andrew Wickman." Id. The plaintiff says that Captain Jane Doe "is also responsible because she is the head of operations at that Jail." Id. The plaintiff seeks $1,000,000 in punitive damages and for his pain and suffering. Id. at 5.

4

C.  Analysis

The plaintiff does not specify whether he had been convicted or was a pretrial detainee at the time of the incident. This distinction determines the proper legal analysis for the plaintiff's claim. The Eighth Amendment governs claims of persons convicted of an offense, while the Fourteenth Amendment governs claims of pretrial detainees. See Collins v. Al-Shami, 851 F.3d 727, 731 (7th Cir. 2017). The Wisconsin Department of Corrections Offender Detail website shows that the plaintiff has been consistently incarcerated since December 19, 2012, when he was admitted to Dodge Correctional Institution. See https://appsdoc.wi.gov/lop/home/home (DOC#280702). In March 2022, he was incarcerated at Columbia Correctional Institution. Id. The Wisconsin Circuit Court Access website shows that the plaintiff is serving a fifteen-year prison sentence for a December 2012 conviction in State v. Henry, Sheboygan County Case Number 2011CF000519. See https://wcca.wicourts.gov/case.html. The plaintiff's court hearing in March 2022 was for State v. Henry, Brown County Case Number 2021CF1069, in which he faces one charge of "Prisoner Throw/Expel Bodily Substances." Id. These references confirm that the plaintiff had been convicted of an offense and was serving a prison sentence when the events alleged in the complaint occurred.

The court analyzes the plaintiff's allegations about the denial of proper medical care under the Eighth Amendment. See Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019). Not "every claim by a prisoner that he has not received adequate medical treatment states a violation

of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776.

The plaintiff has not explained why he takes insulin, but the court can infer it is to treat diabetes. Diabetes is a serious medical need for purposes of an Eighth Amendment claim. Waldrop v. Wexford Health Sources, Inc., 646 F. App'x 486, 491 (7th Cir. 2016). The question is whether the plaintiff has alleged enough to show that the defendants were aware of but disregarded that medical need.

The complaint does not state a claim against Officer Baker. The plaintiff alleges that Baker gave him insulin to take that did not look like the insulin the plaintiff usually takes. When the plaintiff raised concerns about the appearance of the insulin, Baker rudely responded that it was all he had and told the plaintiff to "shut up and take it." Baker also told the plaintiff not to complain about his medication next time and "to just take it" or he would not receive any medication. The plaintiff says that a few hours after taking the insulin, he passed out, woke up feeling dizzy and vomited. The court can infer that the plaintiff believes the substance he received from Baker was not his

6

usual insulin, and that it caused him to pass out and become ill. Or the plaintiff may be alleging that the substance he received was not insulin at all, and that he passed out from insulin withdrawal.

Whichever is the case, the plaintiff cannot proceed on a claim against Baker because the facts he has alleged do not suggest that Baker was indifferent to his medical need for insulin. The plaintiff says that Baker gave him the cloudy insulin and told him it was the only insulin he had for the plaintiff. The plaintiff has not alleged that Baker is a medical professional or that he should know what a specific medication looks like. And although the plaintiff says that he told Baker that the insulin did not look like his usual medication, Baker was not required to believe what the plaintiff told him. See Olson v. Morgan, 750 F.3d 708, 713 (7th Cir. 2014). The fact that Baker provided the plaintiff the incorrect medication on this one occasion "'does not allow a plausible inference of deliberate indifference.'" Robbins v. Waupun Corr. Inst., Case No. 16-CV-1128, 2016 WL 5921822, at *3 (E.D. Wis. Oct. 11, 2016) (quoting Morrison v. Utz, Case No. 11 C 4110, 2012 WL 293548, *2 (C.D. Ill. Jan. 31, 2012); and citing other cases). At most, Baker may have been negligent, but neither negligence nor gross negligence violates the Eighth Amendment. See Farmer, 511 U.S. at 835; Burton v. Downey, 805 F.3d 776, 785 (7th Cir. 2015).

The plaintiff also alleges that Baker used terse language and told him to shut up multiple times. But except in exceptional circumstances, verbal abuse or unprofessional comments from prison officials does not violate the Eight

Amendment. See Lisle v. Welborn, 933 F.3d 705, 719 (7th Cir. 2019) (citing Beal v. Foster, 803 F.3d 356, 357–58 (7th Cir. 2015)) (explaining that prison staff's use of even "[r]epugnant words . . . will seldom rise to an Eighth Amendment violation" because "[r]elationships between prisoners and prison staff are not always marked by genteel language and good manners"). Although telling an incarcerated person to "shut up" is unprofessional and upsetting, it does not rise to the level of an Eighth Amendment violation.

The complaint also does not state a claim against the John Doe officer. The plaintiff's only allegations against Officer Doe are that he confirmed the plaintiff's suspicions that the substance Baker gave the plaintiff was "the wrong insulin" and retrieved a pencil and grievance form when the plaintiff asked for them. The plaintiff does not say when Officer Doe learned that the insulin was the wrong substance, and he does not allege that Officer Doe could have or should have ensured that the plaintiff received the right medication. Even if he had made such allegations, Officer Doe could not be liable for failing to intervene and stop Baker from giving the plaintiff the wrong medication because Baker's acts did not violate the plaintiff's rights. See Harper v. Albert, 400 F.3d 1052, 1064 (7th Cir. 2005) (citing Fillmore v. Page, 358 F.3d 496 (7th Cir. 2004)) (explaining that "[i]n order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation").

The plaintiff alleges that "the" or "they" immediately transferred him back to his prison before he could complete and file the grievance. It is not clear from these allegations whether the Doe officer was involved in calling for the

transport van to take the plaintiff back to his prison or what claim the plaintiff is attempting to state against the Doe officer. The complaint similarly alleges that the plaintiff was in the van headed "back to the prison by Lt. Andrew Wickman." Dkt. No. 1 at 4. This could suggest that Wickman was driving the van to take the plaintiff back to the prison. But the complaint does not name Wickman as a defendant. The court suspects that the plaintiff may be attempting to allege that Wickman (and perhaps the Doe officer) quickly returned him to prison to prevent him from filing a grievance against Officer Baker. But the plaintiff has not alleged that this is what happened, and it is not clear from his allegations who ordered the plaintiff to be sent back to prison or why. But even if this is the plaintiff's purported claim, the plaintiff has no inherent constitutional right to a grievance system. See Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011). That means he cannot state a claim against any officer who he believes attempted to prevent him from filing a grievance against Baker by immediately calling for the transport van to return him to prison.

The plaintiff alleges nothing about the Jane Doe captain and says only that she "is also responsible" because she is the head of operations of the jail. But there is no vicarious liability for supervisors under §1983. Iqbal, 556 U.S. at 676. "Supervisors are responsible for what they do themselves, not for what their subordinates do." Day v. Subsecretario del Sistema Penitenciario Federal, 838 F. App'x 192, 193 (7th Cir. 2021). The plaintiff has not alleged that Jane Doe had any knowledge of or role in the other officers' alleged actions, so he

9

does not state a claim against her. And even if Jane Doe was aware of the other officers' actions, the court has explained why the complaint fails to state a claim against those officers. That means there is nothing for which she could be held responsible. See Harper, 400 F.3d at 1064.

The complaint does not state a claim against any defendant. But because it is possible that if the plaintiff were to provide the court with additional facts, he might be able to state a claim, the court will give him an opportunity to amend his complaint to correct the problems the court has discussed and to better explain his claims. When writing his amended complaint, the plaintiff should give the court enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

The court is enclosing a copy of its amended complaint form. The plaintiff must use this form for his amended complaint and must list the case number for this case—25-cv-20—on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space

on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaint and must be complete by itself. The plaintiff may not refer the court back to his original complaint. Instead he must repeat in the amended complaint any of the facts from the original complaint that he believes are necessary to his claims.

## III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to receive it by the end of the day on **September 26, 2025**. If the court receives an amended complaint by the end of the day on September 26, 2025, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive an amended complaint by the end of the day on September 26, 2025, the court will dismiss this case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$302.15** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an

amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Green Bay Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 12th day of August, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**